IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JEREMY NATHANIEL WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 122-062 |
| | ) | |
| OFFICER REEVES, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, currently incarcerated at Phillips State Prison in Buford, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case concerning events alleged to have occurred at Augusta State Medical Prison ("ASMP"). Defendant Reeves filed a pre-answer motion to dismiss, (doc. no. 15), which Plaintiff opposes, (doc. no. 21). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss be **GRANTED**.

I.  BACKGROUND

A.  **Procedural History**

Plaintiff originally named four Defendants, all of whom worked at ASMP when the events forming the basis of this lawsuit occurred. (See doc. no. 1.) As Plaintiff is proceeding IFP, the Court screened the complaint, and but for an excessive force claim against Defendant Reeves, all claims and Defendants were dismissed from the case. (See doc. nos. 9, 11, 14.) Defendant Reeves returned a waiver of personal service, (doc. no. 12), and in lieu of an answer,

filed a pre-answer motion to dismiss, (doc. no. 15). Defendant also filed a motion to stay discovery pending resolution of the motion to dismiss, and the Court granted that stay. (Doc. nos. 16, 20.)

In his motion to dismiss, Defendant argues the case should be dismissed in its entirety because Plaintiff failed to properly exhaust his administrative remedies prior to filing his complaint. (Doc. no. 15-1, pp. 2-7.) Plaintiff does not provide any substantive opposition to Defendant's argument, focusing instead on his dissatisfaction with the type of receipt provided to a prisoner when a grievance is filed and on the factual substance of his claims. (Doc. no. 21.)

### B. Complaint Allegations

In his complaint signed on May 1, and filed on May 17, 2022, Plaintiff alleges Defendant, a correctional officer at ASMP, attacked Plaintiff on September 19, 2021, with a pair of "suicide scissors" he had been using to cut away a sheet Plaintiff's roommate had wrapped around the door tray flap to prevent it from closing. (Doc. no. 1, p. 6.) Plaintiff attempted to prevent the flap from closing by sticking his hand out of the flap, and he persisted in sticking his hand out of the flap because he did not think Defendant "would really cut [him]." (Id.) To Plaintiff's surprise, Defendant attacked him again with the scissors and nearly cut off the tip of one of Plaintiff's fingers. (Id.) When Plaintiff began recording Defendant and the injured, bleeding finger, Defendant stuck his arm through the tray flap from outside the cell, trying to cut Plaintiff again even though he was no longer trying to stick his hand out of the tray flap. (Id. at 7.) Plaintiff states he utilized the prison grievance procedure and filed an administrative appeal at the highest level. (Id. at 4-5.) Plaintiff seeks compensatory and punitive damages from Defendant. (Id. at 8.)

2

C.     **Plaintiff's Relevant Grievance History**

In support of the motion to dismiss, Defendant produced the declaration of Haley Chester, Grievance Coordinator at ASMP. (See doc. no. 15-2, Chester Decl. ¶ 2.) Ms. Chester is familiar with the Georgia Department of Corrections ("GDC") grievance process, and her responsibilities as Coordinator include ensuring compliance with the applicable grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. ¶¶ 3, 5.)

Ms. Chester has identified four grievances Plaintiff filed between September 19, 2021, the date of Plaintiff's interaction with Defendant forming the basis of this lawsuit, and May 17, 2022, the date the Clerk of Court filed Plaintiff's complaint.[1] (Id. ¶¶ 20-26.) Of those four grievances, only one related to the events at issue in this lawsuit, Grievance Number 338434 ("the Grievance"). (Id. ¶¶ 22-25 & Exs. D, E, F, G.) In the Grievance filed on May 5, 2022, Plaintiff alleged: (1) his original grievance about the events of September 19th was never turned in; (2) his request to speak to a mental health counselor about an issue caused by his roommate had been ignored; (3) his roommate had sexually harassed him; and (4) Defendant cut the tip of Plaintiff's finger. (Chester Decl. ¶ 25 & Ex. G.) The Grievance was rejected on May 26, 2022, because it contained more than one issue, in violation of SOP 227.02. (Chester Decl. ¶ 25 & Ex. G.) Plaintiff filed an appeal the next day, but the appeal was rejected on June 2, 2022, and not addressed on the merits because Plaintiff did not follow the proper procedure

---

[1]Ms. Chester attached a true and correct copy of Plaintiff's Grievance History as maintained in the GDC computer system SCRIBE as Exhibit B to her declaration.

for filing a formal grievance when he raised more than one issue. (Chester Decl. ¶ 25 & Ex. G.)

II.  **DISCUSSION**

   A.  **The Legal Framework for Determining Exhaustion**

Where, as here, a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that the plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case."  McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

  The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).  Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.

  Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules

5

governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play": (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent filing grievances through "machination, misrepresentation or intimidation." Ross v. Blake, 578 U.S. 632, 643-44 (2016). Here, Plaintiff does not contend administrative remedies were not available to him. To the contrary, Plaintiff echoes the statements in Ms. Chester's declaration regarding his use of the grievance procedure but complains only that the copies provided to inmates do not sufficiently memorialize the information provided in a submitted grievance. (See generally Chester Decl; doc. no. 21.)

**B.     The Administrative Grievance Procedure**

The administrative grievance procedure applicable to this case is GDC's SOP Policy Number ("PN") 227.02, which became effective May 10, 2019. (Chester Decl. ¶¶ 5-19 & Ex. A.) The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C). At ASMP, the administrative remedies procedure commences with filing an Original Grievance with a counselor. Id. § IV(C)(1)(c) & (d); Chester Decl. ¶ 11. The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. PN 227.02 § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance

may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. §§ IV(C)(1)(e)(v) & (C)(1)(f)(viii); § IV(C)(2)(a). The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal, at which time the grievance procedure is complete. Id. § IV(C)(2)(e); Chester Decl. ¶ 19.

### C.     Plaintiff's Failure to Exhaust

The events forming the basis of this lawsuit occurred on September 19, 2021. (Doc. no. 1, p. 6.) Plaintiff signed his complaint on May 1, 2022, and it was filed by the Clerk of Court on May 17, 2022. (Id. at 8.) The relevant Grievance which raised Defendant's use of scissors against Plaintiff was filed on May 5, 2022. (Chester Decl. ¶ 25; doc. no. 21.) As described in the official summary of the Grievance, Plaintiff alleged he previously submitted a grievance about the events at issue in this lawsuit, but that form was never "turned in." (Chester Decl. Ex. G.) In his complaint, Plaintiff states he utilized the prison grievance procedure and filed an administrative appeal at the highest level. (Doc. no. 1, pp. 4-5.) Plaintiff also states in his opposition to the motion to dismiss he originally gave his grievance to Ms.

Holiday, a mental health counselor, although he does not state when he did so. (Doc. no. 21, pp. 2-3.) Under step one of Turner, the Court takes Plaintiff's version of the facts as true, concludes dismissal is not appropriate because of the uncertainty about Plaintiff's initial attempts to file a grievance at some point prior to May 5, 2022, and moves to step two. See Turner, 541 F.3d at 1082.

Under the second Turner step, the Court must make specific findings to resolve the factual disputes regarding exhaustion, and Defendant has the burden to prove Plaintiff did not exhaust administrative remedies. See Maldonado v. Baker Cnty. Sheriff's Office, 23 F.4th 1299, 1307 (11th Cir. 2022). As explained in detail below, the Court concludes Defendant has made the requisite showing that Plaintiff did not exhaust his administrative remedies.

Defendant has shown through the Chester Declaration that Plaintiff filed one grievance related to the events forming the basis of this lawsuit, Grievance Number 338434. (Chester Decl. ¶¶ 22-25.) When faced with the Chester Declaration signed under penalty of perjury, Plaintiff's unsworn response focuses on the type of receipts provided to prisoners filing a grievance and the absence of the attachment to the May 5th grievance which Plaintiff maintains detailed the material facts of Defendant's actions on September 19, 2021. (See doc. no. 21.) However, even if the Court assumes for the sake of argument there was a missing grievance that Plaintiff submitted but was not "turned over" prior to the Grievance filed May 5, 2022, Defendant has still satisfied his burden to show Plaintiff did not follow the proper grievance procedure.

First, Plaintiff does not dispute the Grievance addressed more than one topic, a violation of PN 227.02 § IV(C)(1)(e) (ii)(4).[2]  He states only that all the facts related to one, of multiple issues, was not presented in Exhibit G to Ms. Chester's declaration.  Second, even if the Grievance had addressed only the one topic concerning Defendant's use of scissors against Plaintiff, and even if the Grievance would have been considered timely because the original grievance which Plaintiff claims was submitted at some unknown time prior to May 5th was lost through no fault of his own,[3] Plaintiff filed his complaint prior to completion of the two-step grievance process.  Specifically, Plaintiff signed his complaint on May 1st, prior to submission of the Grievance on May 5th.  Even if the Court were to consider the date the Clerk of Court filed the complaint on May 17, 2022, as the relevant date, the rejection of Plaintiff's appeal did not occur until June 2, 2022, after commencement of this federal lawsuit but well within the 120 days permitted for ruling on an appeal.  PN 227.02 § IV(C)(2)(e) & Chester Decl. ¶ 19 & Ex. G.

Plaintiff's focus on grievance receipts and the full substance of an attachment to the Grievance does not refute Defendant's showing that Plaintiff failed to follow the proper procedure when utilizing the administrative remedy process.  The exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of

---

[2]When prison administrators consider the merits of a procedurally improper grievance, the exhaustion defense may be waived.  See Whatley v. Smith, 898 F.3d 1072, 1083-84 (11th Cir. 2018).  Here, however, as discussed above, the merits of the Grievance were not considered, and the exhaustion defense has not been waived.

[3]Plaintiff offers no evidence to substantiate the assertion he submitted a grievance that was not turned over, but even if he had, there is no evidence to even suggest Plaintiff filed a Central Office Appeal, as contemplated by PN 227.02 § IV(C)(1)(f)(viii) & § IV(C)(2)(a)(ii), when he did not receive a response to this initial grievance he claims to have submitted.

compliance with procedural rules.  Johnson, 418 F.3d at 1159.  Thus, the Court finds Plaintiff did not exhaust the two-part grievance procedure.

The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .  For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time.  If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court.  And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Johnson, 418 F.3d at 1159 (allowing an untimely grievance to satisfy exhaustion requirement would defeat aims of PLRA to review the merits of a prisoner's claim, does "not spur the corrective action that might have obviated the need for litigation, . . . filter  . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy").

Therefore, based on the above, the Court finds Defendant has met his burden to show Plaintiff did not satisfy the PLRA's exhaustion requirement prior to filing this lawsuit.  Because Plaintiff did not properly exhaust his administrative remedies with respect to his claims forming the basis of this lawsuit prior to initiating this case, the motion to dismiss should be granted.  Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is

precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**, (doc. no. 15), and that this case be **DISMISSED** without prejudice and **CLOSED**.

SO REPORTED and RECOMMENDED this 17th day of November, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA